# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION AT DAYTON

DAISY YATES,                                    :

      Plaintiff,                        :          Case No. 3:07CV047

 vs.                                           :          District Judge Walter Herbert Rice
                                                             Magistrate Judge Sharon L. Ovington

MICHAEL J. ASTRUE,                              :
Commissioner of the Social
Security Administration,                        :

      Defendant.                        :

====================================================

## REPORT AND RECOMMENDATIONS[1]

====================================================

## I.    INTRODUCTION

Plaintiff Daisy Yates worked for many years caring for and training race horses. (Tr. 103). In or around 1999, she began working less hours in an effort to relieve or cope with back pain. By October 1, 1999, she stopped working because she could no longer perform her job duties due to back pain and because she was suffering from depression. (Tr. 102). At a later point in time she also began to suffer from anxiety. (Doc. #7 at 7-8)(and record citations therein).

In November 2003, Plaintiff turned to the Social Security Administration for

---

[1]  Attached hereto is a NOTICE to the parties regarding objections to this Report and Recommendations.

financial assistance by applying for Disability Insurance Benefits (DIB).   On July 19, 2005 she also applied for Supplemental Security Income.  She asserted in her applications that beginning on January 1, 1999, her medical problems precluded her from performing any significant paid job.  (Tr. 71, 354).

After initial administrative denials, her DIB/SSI applications – along with medical records and other documents – proceeded to a hearing before Administrative Law Judge (ALJ) James I.K. Knapp.  Plaintiff and a vocational expert testified during the ALJ's hearing.  (Tr. 371-95).  In a later written decision, the ALJ concluded that Plaintiff's medical problems did not constitute a "disability" within the meaning of the Social Security Act.  (Tr. 24-45).  The ALJ's non-disability determination and resulting denial of benefits became the final decision of the Social Security Administration.  Such final decisions are subject to judicial review, *see* 42 U.S.C. §405(g), which Plaintiff is now due.

This case is before the Court upon Plaintiff's Statement of Errors (Doc. #7), the Commissioner's Memorandum in Opposition (Doc. #8), the administrative record, and the record as a whole.

Plaintiff seeks an Order reversing the ALJ's decision and remanding for an award of benefits or, at a minimum, an Order remanding this case to the Social Security Administration to correct certain errors.  The Commissioner seeks an Order affirming the ALJ's decision.

## II.    ADDITIONAL BACKGROUND

Plaintiff's age (forty-nine) on the date of the ALJ's decision placed her in the category of a "younger person" for purposes of resolving her benefits applications. *See* 20 C.F.R. §§404.1563(c), 416.963(c).  She has an eleventh grade or "limited" education. 20 C.F.R. §§404.1564(b), 416.963(b).  She last worked as the manager of a horse stable. (Tr. 378).

Plaintiff testified during the ALJ's hearing that she has constant low back pain. (Tr. 378).  The pain radiates into her legs all the way down to her ankles, mostly in her right leg.  (Tr. 378-79).  She takes a low does of Methadone, which "helps somewhat" to relieve her pain.  (Tr. 379).  Before taking Methadone, Plaintiff took Oxycontin for two years.  Oxycontin reduced her pain so she "could function through the day."  (Tr. 379).

Plaintiff estimated that she could stand up to one hour at a time, if she leaned on something for support.  (Tr. 388).  She could sit for up to forty-five minutes, if she is allowed to shift positions.  *Id*.  The most she could lift is a gallon of milk.[2]  *Id*.

Plaintiff further explained to the ALJ that she was depressed.  She testified:

> I don't want to do anything.  I get – I want to be alone, you know, don't want no one talking to me.  My temper – I lose control of my temper. I've gotten so I don't want nothing to do with my grandkids.  I even took a 30 year marriage and didn't want nothing to do with it and got divorced.

(Tr. 383).  Medication for depression, Topomax, seemed to her like it was helping, as

---

[2] One gallon of milk weighs approximately 8.5 pounds or slightly more than one gallon of water (≈8.33 lbs.). *See* http//:www.wikianswers.com/Q/; *see also* http//:www.unc.edu/~rowlett/units/dictG.html.

3

indicated by her increased desire to see her grandchildren more often. *Id.* Yet, she still has trouble getting along with others; she gets very angry with people. (Tr. 389).

Plaintiff testified about her limited daily activities. She spends most of her day sleeping or watching television. On a good day she will wash the dishes. She vacuums about once a week, and if she feels okay, she does the laundry. (Tr. 386). At the time of the ALJ's hearing, Plaintiff had moved in with her ex-husband because she could not stand the stress of living in her daughter's household with her very young grandson. (Tr. 385). This was so even though she was not solely responsible for caring for her grandson; her daughter took care of him.  She does not go to church or the movies; she shops with her ex-husband once a week; she does not perform garden or yard work; she does not visit others with the exception of biweekly visits with her son's daughters. (Tr. 378-88).

Turning to the other evidence and other information in the administrative record, the parties have provided informative and detailed descriptions of that evidence. *See* Doc. #7 at 1-11; Doc. #8 at 1-12. In light of this, and upon consideration of the complete administrative record, additional detailed discussion of the record would be unnecessarily duplicative, a general identification of the medical sources upon whom the parties rely will help frame further review.

Plaintiff relies on the opinions of her treating psychiatrist, Dr. Toca, who indicated in October 2005 that Plaintiff could not sustain the basic mental demands of work on a regular and continuing basis. (Doc. #7 at 13-16). As to her back pain, Plaintiff relies on

4

the opinions of Dr. Linn, her long-term treating physician, who concluded that she could not perform the exertional requirements of even sedentary work.  (Doc. #7 at 16-18).  She also relies on the similar opinions of Dr. Reddy, her treating pain specialist.  *Id.*

The Commissioner relies on the opinions of Dr. Boerger, who "obtained a detailed assessment of Plaintiff's daily activities and performed detailed mental status testing (i.e., cognitive functioning memory recall, mathematical equations, serial sevens, etc.)."  (Doc. #8 at 20).  As to Plaintiff's physical work abilities, the Commissioner relies on the opinions of Dr. Duritsch, a board certified physical medicine and rehabilitation specialist, and Dr. Goodall, a neurosurgeon.  *Id.* at 13-19.  The Commissioner also contends that information documented by other specialists – Drs. Schriber, Demirjian, Moncrief – conflicts with Dr. Reddy's opinions.  *Id.*

## III.  ADMINISTRATIVE REVIEW

The definition of the term "disability" is essentially the same for both DIB and SSI.  *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986).  Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are both "medically determinable" and severe enough to prevent the applicant (1) from performing his or her past job, and (2) from engaging in "substantial gainful activity" that is available in the regional or national economies.  *See Bowen*, 476 U.S. at 469-70 (1986).  A DIB/SSI applicant bears the ultimate burden of establishing that he or she is under a disability.  *See Key v. Callahan*, 109 F.3d 270, 274 (6th Cir. 1997); *see Wyatt v. Secretary of Health and Human Services*, 974 F.2d 680, 683 (6th Cir. 1992); *see also Hephner v.*

5

*Mathews*, 574 F.2d 359, 361 (6th Cir. 1978).

Social Security Regulations require ALJs to resolve a disability claim through a five-Step sequential evaluation of the evidence.  *See* Tr. 23-31; *see also* 20 C.F.R. §§404.1520(a)(4), 416.920(a)(4).[3]  Although a dispositive finding at any Step terminates the ALJ's review, *see also Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the evaluation answers five questions:

1.  Is the claimant engaged in substantial gainful activity?

2.  Does the claimant suffer from one or more severe impairments?

3.  Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?

4.  Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?

5.  Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. §416.920(a)(4); *see also Colvin*, 475 F.3d at 730; *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

In the present case the ALJ found at Step 2 that Plaintiff had the following severe impairments: "(1) mild lumbar degenerative disc disease, and, since January 2004, (2) depressive disorder NOS [not otherwise specified], and (3) anxiety disorder NOS."  (Tr.

---

[3]  The remaining citations will identify the pertinent SSI Regulations with full knowledge of the corresponding DIB Regulations.  Plaintiff met the insured-status requirement for DIB eligibility for a brief period (January 1, 1999 through March 1999).  *See Colvin*, 475 F.3d at 730; *see also* Tr. 43.

42).  The ALJ determined at Step 3 that Plaintiff does not have an impairment or a combination of impairments that meet or equal one in the Listings.  *Id*.

At Step 4 the ALJ found that Plaintiff had the Residual Functional Capacity to perform a limited range of medium work.[4]  The ALJ described his specific findings as follows:

> The claimant lacks the residual functional capacity to: (1) lift more than 25 pounds frequently or 50 pounds occasionally; (2) stoop below waist level more than occasionally; (3) climb ladders or scaffolds; (4) work at unprotected heights or around moving machinery; and since January 2004, (5) have more than occasional contact with the public, supervisors, or co-workers; (6) do other than low stress work (i.e., no job involving above average pressure for production, work that is other than routine in nature, or work that is hazardous); or (7) follow complex or detailed instructions.

(Tr. 43).  This assessment, along with the ALJ's findings throughout his sequential evaluation, led him to ultimately conclude that Plaintiff was not under a disability and hence not eligible for DIB or SSI.  (Tr. 43-45).

## IV.    JUDICIAL REVIEW

Judicial review of an ALJ's decision determines whether substantial evidence in the administrative record supports the ALJ's factual findings.  *Bowen v. Comm'r. of Soc. Sec*., 478 F3d 742, 745-46 (6th Cir. 2007).  "Substantial evidence is defined as 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Bowen*, 478 F3d at 746 (citing in part *Richardson v. Perales*, 402 U.S. 389,

---

[4]  The Regulations define medium work as involving the ability to lift "no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds...."  20 C.F.R. §404.1567(c).

7

401 (1977)).  It consists of "'more than a scintilla of evidence but less than a preponderance...'"  *Rogers v. Comm'r. of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007).

Judicial review for substantial evidence is deferential not *de novo.  See Cruse v. Commissioner of Social Sec.* 502 F.3d 532, 540 (6th Cir. 2007); *see also Cutlip v. Secretary of Health and Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994).  The Court's agreement or disagreement with the ALJ's findings plays no role in the substantial evidence review, and no significance attaches to contrary evidence in the record – if other substantial evidence supports the ALJ's findings.  *Rogers*, 486 F.3d at 241; *see Her v. Comm'r. of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999).

Still, reviewing for substantial supporting evidence is not the stopping point of judicial analysis.  Courts also examine the administrative decision to determine whether the ALJ applied the correct legal criteria.  *See Bowen*, 478 F.3d at 746.  If the ALJ did not, the decision may not be upheld even when substantial evidence supports the ALJ's findings.  *See id.*  For example, a decision will not be upheld where the ALJ failed to apply the standards mandated by the Social Security Regulations and where that failure prejudices a claimant on the merits or deprives the claimant of a substantial right.  *See Bowen*, 478 F.3d at 746 (and cases cited therein).  Indeed, through *Bowen* and other recent Sixth Circuit cases, an ALJ's failure to apply the correct legal criteria – at least when evaluating medical source opinions – mandates further judicial review for harmless error.  *Bass II v. McMahon*, 499 F.3d 506, 512 (6th Cir. 2007); *see Bowen*, 478 F.3d at 747-49; *see also Wilson*, 378 F.3d at 547-49 (offering examples of possible *de minimis*

8

errors).  Consequently, if the ALJ erred by not applying the correct legal criteria but the error was harmless, the decision should be affirmed.  *See Bass II*, 499 F.3d at 512 (and cases cited therein).

## V.     DISCUSSION

### A.     <u>Plaintiff's Contentions</u>

Plaintiff contends that the ALJ erred by rejecting the opinions of Dr. Toca, her treating psychiatrist, and by crediting the opinions of Dr. Boerger, a one-time examining psychologist.  Plaintiff reasons that the ALJ failed to apply the correct legal criteria during his evaluation of Dr. Toca's opinions, especially by omitting or overlooking the types of signs and symptoms described in Listing 12.00B[5] and *Blankenship v. Bowen*, 874 F.2d 1116, 1121 (6th Cir. 1989).  Without referring to such signs and symptoms, the ALJ's decision fails to provide a valid reason for rejecting Dr. Toca's opinions, according to Plaintiff.

Plaintiff also maintains, for reasons detailed below, *infra*, §V(C), that she "is more physically limited than found by the administrative law judge."  (Doc. #7 at 16).

### B.     <u>Medical Source Opinions</u>

Social Security Regulations require ALJs to evaluate every medical opinion of record regardless of its source.  *See* 20 C.F.R. §416.927(d).  The required evaluation first focuses on treating physicians or psychologists, whose opinions are entitled to controlling

---

[5]  Listing 12.00B states, "Psychiatric signs are medically demonstrable phenomena that indicate specific psychological abnormalities, *e.g.*, abnormalities of behavior, mood, thought, memory, orientation, development, or perception, as described by appropriate medical sources."

weight under the treating physician rule as long as they are (1) well supported by medically acceptable data and (2) not inconsistent with other substantial evidence of record. 20 C.F.R. §416.927(d)(2); *see Wilson v. Commissioner of Social Security*, 378 F.3d 541, 544 (6th Cir. 2004). When these requirements are not met, the treating physician rule does not apply. *Id.*

Once the ALJ has concluded that the treating physician rule does not apply to a particular treating source's opinion, the evaluation has only just begun. The ALJ must continue to evaluate the treating source's opinion by considering the following additional factors:

1. The length of the treatment relationship, the frequency of examination, and the nature and extent of the treatment relationship;

2. The 'supportability' of the opinion – whether it is supported with relevant evidence and whether it is well explained;

3. The consistency of the opinion with the record as a whole;

4. The specialization, if any, of the treating source; and

5. 'Other factors' brought to the ALJ's attention, including, for example, the treating source's knowledge of the SSI or DIB programs and its evidentiary requirements.

20 C.F.R. §416.927(d)(2)-(6); *see Wilson*, 378 F.3d at 544.

As to non-treating medical sources – such as one-time examiners or medical experts who testify during the administrative hearing – ALJs must evaluate their opinions under the same factors applicable to treating medical sources – supportability, consistency, specialization, *etc*. *See* 20 C.F.R. §416.927(d), (f). The Regulations appear

10

to emphasize this requirement by reiterating it no less than three times.  *See* 20 C.F.R.

§416.927(d) ("we consider all of the following factors in deciding the weight to give any

medical opinion...."); *see* also 20 C.F.R. §416.927(f)(ii) (factors apply to opinions of state

agency consultants); 20 C.F.R. §416.927(f)(iii) (same as to medical experts' opinions);

Social Security Ruling 96-6p, 1996 WL 374180 at *2 (same).

### C.    Analysis

### 1.

The ALJ correctly described the legal standards applicable under the treating

physician rule (without calling it such) and also correctly described the additional

regulatory factors that apply to treating physicians and other medical sources under 20

C.F.R §§416.927(d) and (f).  *See* Tr. 37-38.  The ALJ then applied the correct legal

criteria to Dr. Toca's opinions, finding them inconsistent with Plaintiff's own descriptions

of her activities and with the level of functioning she demonstrated during tests

administered by Dr. Boerger.  *See* Tr. 40.  By evaluating Dr. Toca's opinions in this

manner, the ALJ did not err as a matter of law.  *See* Tr. 40-41; *see also* 20 C.F.R.

416.927(d)(2)-(5).

Substantial evidence supports the ALJ's decision not to place controlling or any

significant weight on Dr. Toca's opinions.  As the Commissioner correctly recognizes,

Dr. Toca provided her disability opinions after seeing Plaintiff only a few times over a

brief four-month period.  *See* Tr. 40, 323-24.  This relatively brief period of treatment and

with infrequent sessions of treatment constituted a valid reason for not fully crediting Dr.

11

Toca's opinions.  *See* 20 C.F.R. §416.927(d)(2) ("Generally, the longer a treating source

has treated you and the more times you have been seen by a treating source, the more

weight we will give to the source's medical opinion.").

In addition, when Dr. Toca was asked (via interrogatories) to cite medical/clinical

findings in support of her disability assessment, she indicated that Plaintiff had high

anxiety levels despite taking medication and had trouble focusing and staying on task.

(Tr. 324).  Dr. Toca also noted that Plaintiff's memory and concentration were greatly

impaired.  (Tr. 324).  Yet, these reasons conflict with the Dr. Toca' mental status findings

that she noted at office visits with Plaintiff – normal speech/language; normal thought

process/content, memory, orientation, concentration; and no perceptual abnormalities.

*See* Tr. 313-16, 321.  In addition, Dr. Toca's statement that Plaintiff had high anxiety

levels despite taking medication is in direct conflict with Plaintiff's statements to Dr.

Boerger that as long as she was taking Xanax, she did not feel nervous.  *See* Tr. 203.

Further undermining Dr. Toca's statement, there is no indication in Dr. Toca's records

that Plaintiff reported experiencing high anxiety.  *See* Tr. 313-22.

The ALJ reasonably gave more weight to Dr. Boerger's opinion because, in

contrast to Dr. Toca, Dr. Boerger relied on a detailed assessment of Plaintiff's daily

activities along with results from mental status tests he administered (measuring cognitive

functioning, memory recall, and mathematical aptitude).  *See* Tr. 36-37, 40-41, 201-05,

313-22.  In this manner, Dr. Boerger did not rely only on Plaintiff's statements

concerning what she could or could not do; he based his opinion on the types of signs

12

described in Listing 12.00B, unlike Dr. Toca who appeared to rely only on Plaintiff's own statements. *See* Tr. 40-41; *see also Smith v. Comm'r. of Soc. Sec.*, 482 F.3d 873, 877 (6th Cir. 2007)(finding no error when ALJ rejected physician's opinion that was based only on the plaintiff's description of her symptoms where the ALJ found her description to lack credibility); *cf.* 20 C.F.R. §416.929(a) ("statements about your pain and other symptoms will not alone establish that you are disabled....").

Contrary to Plaintiff's contentions, the ALJ also did not overlook or ignore the signs and symptoms described in Listing 12.00B. The ALJ instead applied the correct legal criteria, including the factors of supportability and consistency, and he reasonably relied on the opinions of Dr. Boerger. *See* Tr. 40-41. Dr. Boerger's detailed report discussed and applied the types of psychiatric signs described in Listing 12.00(B) and in *Blankenship*, 874 F.2d at 1121, and he used diagnostic testing to evaluate Plaintiff's mental functioning. *See* Tr. 201-05. For example, Dr. Boerger conducted a detailed assessment of Plaintiff's daily activities along with results of mental status tests he administered to Plaintiff. The tests results addressed Plaintiff's cognitive functioning, memory recall, mathematical equations, serial sevens. *See* Tr. 36-37, 40-41, 201-05, 313-22. Dr. Boerger also observed that Plaintiff's speech and thought processes were appropriate, relevant and coherent, and that she had only mild problems with recall of information. (Tr. 203). Dr. Boerger further considered Plaintiff's mental status in categories involving potential "psychological abnormalities" – as required by Listing 12.00B – such as affect and mood, anxiety, mental content, and sensorium and cognitive

13

functioning. (Tr. 203-04). And the ALJ described in detail and considered Plaintiff's subjective descriptions of her psychological symptoms in these categories . *See* 202-05. Because the ALJ relied on Dr. Boerger's opinions and because Dr. Boerger's psychological assessment addressed whether or not Plaintiff suffered from the types of psychological signs required by Listing 12.00B and *Blankenship*, 874 F.2d at 1121, Plaintiff's contention that the ALJ erred by overlooking or ignoring these signs lacks merit.

For all the above reasons, Plaintiff's challenges to the ALJ's rejection of Dr. Toca's opinions and to the ALJ's evaluation of her mental work abilities are not well taken.

## 2.

Plaintiff argues that, contrary to the ALJ's findings, she is not physically able to perform a limited range of medium work. According to Plaintiff, the ALJ erred by failing to provide any analysis of the opinions provided by the following medical sources: Dr. Linn, her long-term treating physician; Dr. Reddy, her treating pain specialist; and Dr. Duritsch, a consultative examiner upon whom the ALJ relied. Plaintiff further contends that the ALJ substituted his own lay opinion in place of the required evaluation of these medical sources' opinions, and as a result, substantial evidence does not support the ALJ's assessment of her residual functional capacity. Plaintiff's contentions lack merit.

As noted previously, *supra*, §V(C)(1), the ALJ accurately described the legal criteria applicable to the evaluation of treating medical sources. *See* Tr. 37-38. In doing

14

so, the ALJ did not err as a matter of law.

The ALJ reported Dr. Linn's opinions that Plaintiff could only lift up to five pounds; stand and walk up to 40 minutes in an eight-hour day, 5 minutes at a time; and sit for 2 hours in an eight-hour day, for 5 minutes at a time. (Tr. 39, 307). The ALJ then declined to accept Dr. Linn's opinions based on factors permitted by the Regulations. This appears in the ALJ finding that Dr. Linn's opinion was not supported by adequate objective findings and his opinion was contradicted by the more expert opinions of specialists Drs. Duritsch and Goodall. *See* Tr. 39. Dr. Linn, moreover, cited no examination findings in support of his opinions, *see* Tr. 307, a proper consideration under the Regulations. *See* 20 C.F.R. §416.927(d)(3) (the better an explanation a source provides for an opinion, particularly objective medical findings, the more weight the ALJ will give to that opinion). Although Plaintiff asserts that Dr. Linn's opinion was supported by objective medical evidence, she does not cite to any medical evidence concerning her physical health problems after her SSI filing date of July 19, 2005, an understandable omission since a review of the administrative record does not reveal the existence of such evidence after that date. *See* Doc. #7 at 16-18; *see also* Doc. #8 at 15.

Rather than crediting Dr. Linn's opinion, the ALJ reasonably placed greater weight on certain non-treating physicians by applying the "specialization" factor permitted by the Regulations. *See* Tr. 39; *see also* 20 C.F.R. §416.927(d)(5) (more weight is generally placed on the opinion of a specialist about medical issues related to his or her specialty than to the opinion of non-specialist). Dr. Duritsch is a board certified physical medicine

15

and rehabilitation specialist; Dr. Goodall is a neurosurgeon.  As such, they are specialists in treating complaints of back pain, while Dr. Linn was a family medicine physician, as the ALJ correctly recognized.  *See* Tr. 39, 172, 195-96.

Next, the ALJ considered Dr. Reddy's opinion that Plaintiff could lift up to 2 pounds occasionally and no weight frequently; stand and walk 4 hours per eight-hour workday, one hour without interruption; could sit for 4 hours per eight hour workday, one-half to one hour at a time and that Plaintiff could never climb, balance, stoop, crouch, kneel, or crawl.  (Tr. 309-10).  After reviewing Dr. Reddy's opinion in light of the other evidence of record, the ALJ properly found that Dr. Reddy's opinion was also not entitled to either controlling or deferential weight as his opinion lacked the necessary supportability and consistency.  *See* Tr. 39-40.  A November 2004 MRI study revealed only mild degenerative disc disease at L4-L5, mild disc bulging without herniations at L3-L4, and mild to moderate fact arthritic changes at several joints.  *See* Tr. 235.  As for the radiculopathy, the ALJ correctly found that it had not been conclusively established, and certainly the report concerning the November 2004 MRI did not confirm radiculopathy.  *See* Tr. 39, 235.  The ALJ also correctly indicated that Plaintiff's lumbar MRI studies remained consistent through the years, *see* Tr. 158, 235-36, and she never developed a disc herniation, *see* Tr. 158, 235-36.

Perhaps most significantly, the administrative record does not contain Dr. Reddy's treatment notes or records concerning Plaintiff (Tr. 309-10), and as a result, the administrative record fails to support Dr. Reddy's reliance on his own clinical

16

examination findings.  It is likewise unclear what type of medical specialization Dr. Reddy holds.  As the ALJ indicated, Dr. Reddy's opinion conflicted with the opinions of documented specialists – Dr. Schriber (internist and rheumatologist), Dr. Demirjian (pain management specialist), and Dr. Moncrief (neurosurgeon), all of whom recommended that Plaintiff engage in increased physical activity (*i.e.*, normal activities, walking, jogging, water activities, aerobic activities) and that she stop taking so many narcotic pain medicines.  *See* Tr. 237, 239, 294.

Also undermining the validity of Dr. Reddy's disability opinion, two other physicians found Plaintiff's subjective complaints to exceed the objective clinical findings.  For example, a consulting physician, Dr. Schriber, found Plaintiff's lumbar limitation to be mild, but "questionable."  (Tr. 237).  Similarly, a treating physician, Dr. Demirjian, found Plaintiff's subjective complaints of feeling pain at a level of 9 out of 10 to be "discordant" with her "completely normal" examination findings.  (Tr. 238).  He also found her report of falling 6-7 feet onto her buttocks and her report of easy bruising unsupported by his examination findings.  (Tr. 238).  In light of the above-noted evidence and for all the above reasons, the ALJ reasonably found that Dr. Reddy's opinion was not entitled to either controlling or deferential weight as his opinion lacked the necessary supportability and consistency with the other record evidence.

Accordingly, Plaintiff's challenges to the ALJ's assessment of her physical work abilities and the ALJ's evaluation of the medical sources opinions addressing her physical work abilities lack merit.

17

## IT IS THEREFORE RECOMMENDED THAT:

1.      The Commissioner's final non-disability decision be affirmed; and

2.      The case be terminated on the docket of this Court.


March 12, 2008                                    _____s/Sharon L. Ovington_____
                                                                Sharon L. Ovington
                                                                United States Magistrate Judge

**NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within ten days after being served with this Report and Recommendations.  Pursuant to Fed. R. Civ. P. 6(e), this period is extended to thirteen days (excluding intervening Saturdays, Sundays, and legal holidays) because this Report is being served by mail.  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.  If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections within ten days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See United States v. Walters*, 638 F. 2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140 (1985).

19